IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. BJORN CHRISTIAN LUSTER, Defendant. | Case No. CR13-2021 ORDER FOR PRETRIAL DETENTION |

On the 28th day of August, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 21, 2013, Defendant Bjorn Christian Luster was charged by Indictment (docket number 2) with possession of unregistered firearm, namely, a destructive device. At the arraignment on August 23, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on October 21, 2013.

At the hearing, ATF Special Agent Timothy Hunt testified regarding the circumstances underlying the instant charge. On January 4, 2013, law enforcement executed a search warrant at Defendant's residence. Officers found methamphetamine, drug paraphernalia, and a "destructive device." The destructive device consisted of a $CO_2$ cartridge containing powder, with a fuse and shrapnel attached to it. The shrapnel consisted of nails and BBs.

Special Agent Hunt also testified that law enforcement obtained text messages from Defendant's phone. The text messages included threats from Defendant to his former girlfriend. For example, Defendant stated that he knew his former girlfriend was cooperating with police and he wanted to know what she told them. He further stated that people would get mad when they found out she was a "snitch," and she would end up raped and in a dumpster. As a consequence of the messages, Defendant pleaded guilty to harassment, 3rd degree. In February 2013, while Defendant was detained in jail on the harassment charge, he wrote threatening messages to members of law enforcement on his sandals. Specifically, Defendant wrote that any officer that harassed him would have his or her house and anything inside it burned down.

On April 17, 2013, while accompanied by his attorney, Defendant was interviewed by law enforcement. Initially, Defendant claimed that his former girlfriend brought the destructive device to his house, but he later admitted making the device with her. Defendant also claimed that he did not intend to hurt anyone with the device, but simply wanted to see what would happen if it blew up. Defendant also discussed methamphetamine trafficking with law enforcement, and indicated that his methamphetamine source was in Minnesota.

According to the pretrial services report, Defendant is 34 years old. He is a lifelong resident of northeast Iowa. At the time of his arrest he resided in Cresco, Iowa. Defendant is currently single, but was married once in the past. He has one child from that marriage. He also has one child from a different relationship. Both children reside with their respective mothers in Cedar Rapids, Iowa, and Decorah, Iowa.

At the time of his arrest, Defendant had been employed as a warehouse laborer at MDK Incorporated in New Hampton, Iowa, for two weeks. Prior to this recent employment, Defendant was employed at Deco Products Company in Decorah from 1999 to August 2012. Defendant is in good physical health and reports no history of mental or

emotional health concerns. Defendant told the pretrial services officer that he consumes alcohol regularly on weekends. He stated that he used marijuana on a regular basis as a teenager, but had not used it the past 12 years. Defendant also admitted occasional cocaine use in the past, but stated that he had not used it in the past 5 years. Lastly, Defendant told the pretrial services officer that he first used methamphetamine at age 17, and only used it twice per year until 2012, when he started using it "every other day." He stated his last use was about one month ago. Defendant reported he underwent substance abuse treatment while incarcerated, and has recently been seeing a privately retained counselor in Cresco.

Defendant has an extensive criminal record. On May 19, 1997, at age 18, Defendant was charged with third degree burglary. While that charge was pending, Defendant was arrested three times for public intoxication and OWI (twice). He was convicted of all three charges, and failed to appear for sentencing on the first OWI charge.[1] On September 29, 1997, Defendant was placed on probation in the May 1997 burglary case. While on probation, Defendant was arrested five more times for driving with a revoked license (twice), possession of alcohol as a minor, and driving while barred (twice). Defendant was convicted of all five charges, and failed to appear multiple times in the second driving while revoked charge.[2] In August 1999, following these five arrests, Defendant was found in contempt of court in the burglary case and sentenced to 60 days in jail.

On February 1, 2000, while on probation in both the 1997 burglary charge and the 1999 driving while barred charge, Defendant was charged and later convicted of

---

[1] An arrest warrant was issued and later served on Defendant for his failure to appear at the OWI sentencing.

[2] Two arrest warrants were issued and later served in that case.

possessing a firearm as a felon. On July 11, 2000, Defendant was sentenced to 5 years in prison on the possession of a firearm as a felon case. On July 17, 2000, Defendant's probation in the 1997 burglary charge was revoked, and he was sentenced to 5 years in prison. He was paroled from prison on September 7, 2001, and discharged from parole on November 5, 2002.

On November 4, 2003, Defendant was charged and later convicted of OWI, first offense.[3] The following day, on November 5, 2003, Defendant was charged and later convicted of interference with official acts. On July 25, 2004, while on probation, Defendant was charged with assault and consumption of alcohol in a public place. Defendant pleaded guilty to the assault charge, and the consumption of alcohol charge was dismissed. On August 2, 2004, a violation of probation petition was filed against Defendant, but the petition was dismissed in September 2004. Defendant was discharged from probation on April 5, 2005.

On May 10, 2007, Defendant was charged and later convicted of trespass.[4] On the same date, Defendant was charged in a separate case with violation of a no contact order. That charge, however, was later dismissed. On December 9, 2007, Defendant was charged with domestic abuse assault causing bodily injury. That charge was ultimately dismissed. On December 11, 2007, while charges were pending, Defendant was charged in two separate cases with possession of drug paraphernalia, and controlled substance violation and failure to affix a tax stamp. Both cases were later dismissed.

---

[3] While he was charged with OWI, first offense, it was Defendant's third lifetime conviction for OWI.

[4] Defendant was originally charged with first degree burglary and going armed with intent, but the going armed with intent charge was dismissed and the first degree burglary charge was amended to trespass.

On April 17, 2008, Defendant was charged and later convicted of driving while intoxicated.[5] Defendant was given a suspended jail sentence and 2 years probation. He was discharged from probation on October 27, 2010.

On July 19, 2011, Defendant was charged and later convicted of OWI, second offense.[6] In addition to a jail sentence, Defendant was also given 1 year probation. On September 23, 2011, while on probation, Defendant was charged and later convicted of public intoxication.

On November 1, 2012, Defendant was charged in three separate cases. First, he was charged with failure to affix a tax stamp. Next, he was charged with a controlled substance violation, gathering for use of marijuana, possession of a firearm by a felon, unlawful possession of a prescription drug, and possession of a controlled substance. Lastly, Defendant was charged with possession of drug paraphernalia. All three cases remain pending in state court.

On January 4, 2013, while the drug and firearm charges remained pending, Defendant was again charged in two separate cases.[7] In the first case, Defendant is charged with controlled substance violation, failure to affix a tax stamp, falsifying public documents (four counts), gathering for use of drugs, unauthorized possession of offensive weapons, possession of a controlled substance, and obstructing prosecution. In the second case, Defendant is charged with possession of drug paraphernalia. Both cases remain pending in state court. On January 9, 2013, while multiple charges remained pending, Defendant was charged with illegal possession of a gambling device. That charge remains

---

[5] Initially, Defendant was also charged with OWI, failure to notify of a traffic accident, open bottle, and driving without a valid license. All of these charges, however, were dismissed.

[6] Defendant was originally charged with OWI, third or subsequent offense, but he pleaded guilty to the lesser charge of OWI, second offense. It was Defendant's fifth lifetime OWI conviction.

[7] These charges are related to the instant federal case.

pending in state court. Lastly, on January 20, 2013, while multiple charges were pending, Defendant was charged and later convicted of third degree harassment.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with possession of an unregistered firearm, namely, a destructive device. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, the weight of the evidence against Defendant is strong. On January 4, 2013, law enforcement executed a search warrant at Defendant's residence. During the search, officers found drugs, drug paraphernalia, and a "destructive device." The destructive device was a $CO_2$ cartridge containing powder with a fuse and shrapnel attached to it. The shrapnel consisted of nails and BBs. Defendant admitted to law enforcement that he made the device with his former girlfriend.

Obviously, the construction of a homemade bomb constitutes a danger to the community. Defendant has previously been convicted and sent to prison for being a felon in possession of a firearm. Furthermore, at the time of the events giving rise to the instant federal charge, Defendant was on pretrial release for drug and firearm charges. This is not an isolated incident, as Defendant has a history of committing additional crimes while on pretrial release and probation. Defendant is also an active drug user. Additionally, Special Agent Hunt testified that while Defendant was in jail for threatening his former girlfriend, Defendant made threats to law enforcement officers. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if Defendant were released. Accordingly, there is no condition or combination of conditions that would assure the safety of the community if Defendant is released. Therefore, based on the serious nature and circumstances of the offense, his extensive criminal record, his ongoing drug use, and history of committing offenses while on pretrial release and probation, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of

his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (August 23, 2013) to the filing of this Ruling (August 29, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 29th day of August, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA